IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CHRISTOPHER POWELL, et al.**                                                      **PLAINTIFF**

**VERSUS**                                              **CIVIL ACTION NO. 1:03cv658JMR-JMR**

**ROHM AND HAAS COMPANY**                                                      **DEFENDANT**

## MEMORANDUM OPINION

This cause comes before the Court on the motion of the Defendant, Rohm and Haas Company for summary judgment [31-1] to Rule 56 of the Federal Rules of Civil Procedure. After due consideration of the evidence of record, the briefs of counsel, the applicable law and being otherwise fully advised in the premises, the Court finds as follows.

### Standard of Review

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The moving party initially carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Materiality connotes disputes over facts that might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Further, "summary judgment will not lie if the dispute about a material fact is `genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party bears the initial burden of establishing the absence of evidence to support

1

the nonmovant's cause of action. *Celotex,* 477 U.S. at 325; *Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir. 1996). Should this burden be met by the moving party, the nonmoving party then must establish sufficient facts beyond the pleadings to show that summary judgment is inappropriate. *Exxon Corp. v. Burglin,* 4 F.3d 1294, 1297 (5th Cir. 1993). The Court examines applicable substantive law to determine which facts and issues are material. *King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). The nonmoving party must oppose the summary judgment motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e). If the opponent fails in his duty, after the Court has viewed the evidence in the light most favorable to the non movant, summary judgment is implicated. *Id.*; *Exxon*, 4 F.3d at 1297. Assertions unsupported by facts are insufficient to oppose a summary judgment motion, *Williams v. Weber Management Services,* 839 F.2d 1039 (5th Cir. 1987).

## Statement of Facts

In 2002 Defendant, Rohm and Haas Company closed its chemical plant in Moss Point, Mississippi. On June 5, 2003, plaintiff, Christopher Powell, filed a Complaint against his former employer, Rohm and Haas seeking payment of severance benefits under the Rohm and Haas Severance Benefit Program("SBP"). Since the SBP was an employee benefit plan under the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C.§1001 et seq, Defendant removed this case to this Court.

In June of 1981, plaintiff began a job in production at the chemical plant in Moss Point, Ms. From June 18, 1981 to September 30, 2001, he worked in various jobs. (Def. Mot for Summary Judgment, Exhibit 11). The Moss Point Plant which was operated by Thykoll in the 1980s was sold

2

to Morton International, Inc. and later acquired by Rohm and Haas in 1999. Plaintiff worked for the last nine years of his employment as a chemical operator and in that position was a member of a union that represented hourly employees at the Plant. Id.

In the early 1990s, Plaintiff held non union, salaried, supervisory positions in production. In October of 1998, he became a production shift supervisor in Area 2 at the Plant.(Id). As an Area 2 shift supervisor, plaintiff was responsible for meeting production goals and for supervising approximately 18 employees. In 2001, plaintiff reported to Area Manager Tracy Williams ("Williams") who reported to Plant Manager Jane Bowen ("Bowen").

In the Spring of 2001, Rohm and Haas announced to its Moss Point employees that it was planning to shut down the Plant. At the time of the announcement, upper management met with employees and distributed informational documents which repeatedly stated that production would continue to mid December 2001. Plaintiff was told in at least one of those meeting that production would continue until approximately December 14, 2001. Id

In addition to the meetings and documents, Bowen regularly sent e-mail updates to employees in 2001 on the status of the Plant as it moved toward shutdown. (Id.) In a September 16, 2001 e-mail received by plaintiff, Bowen listed a December 14, 2001shutdown for the Area 2 chemicals. Id and Exhibit 4) Bowen noted that some production "units are running significantly below the plan" and stressed that "we are obligated to support our customers through the end of the year I hope I can count on your continued support for the remaining three months of operation." Id

Defendant alleges that due to these production commitments, the most important group of employees to retain at the Plant were the employees such as the plaintiff who were experienced in production. Bowen attests that in selecting or approving assigned last days of work for Moss Point employees, she did not allow an assigned last day before 2002 for any production supervisor. (Id and

Defendant's Motion for Summary Judgment Exhibit 8)

In July 11, 2001 an email entitled "Last Work Day" to the plaintiff, Area Manager Williams informed the plaintiff that his "official last day is January 31, 2002". (Id and Exhibit 5) After July 11, 2001, plaintiff never received any other written notification from Williams or Bowen changing his assigned last day. Id

In a September 27, 2001 report, Human Resources Manager Boyce Godwin listed the assigned last day for all salaried employees. The nine production supervisors were given last dates commencing February 1, 2002. However, Bowen did approve assigned last days in 2001 for other groups of employees.

Plaintiff terminated his employment on September 30, 2001 to begin a new job with Chevron in Pascagoula, Mississippi on October 1, 2001. As of September 30, 2001, he was still supervising 18 employees. He was the first supervisor to leave the Moss Point plant. Id.

On September 10, 2001, after he received a Chevron job offer, he completed a Desire to Separate form in which he expressed his desire to separate from Rohm and Haas and receive a SBP benefit. Directly above plaintiff's signature on this Desire to Separate form is the following Notice in bold:

> **This form is neither a contract between the Employee and the Company, nor a commitment by the Company to agree to separate the Employee from the Company It is a Company decision as to whether an Employee will separate from the Company under the terms of the SBP and specific approval is required for any separation resulting from the Employee's signing this form. The approval will be effective only upon receipt of a written approval form signed by the HR Manager representing the employee's group.**

Id. Plaintiff never received a written approval of his desire to separate by Godwin. Plaintiff's completed Desire to Separate form was treated as a claim for the SBP benefit and the claim was

denied in a September 12, 2001 email to the plaintiff from Williams. The basis for the denial was that there was a lack of trained supervisors and the plaintiff was significantly behind in the supply plan. On September 15, 2001, Plaintiff replied to the email by raising two points (1) that Miller Power, a Maintenance Supervisor was going to replace him and (2) that two bargaining and three non bargaining employees had received the severance benefit. Id. Plaintiff admitted that Power was never a production supervisor or operator at the Plant. Id.

On September 19, 2001, Williams responded to the Plaintiff's September 15, 2001, email by stating that his SBP could not be approved because they had nine open positions, two inexperienced supervisors and were 30% behind in production. Williams concluded that after having discussing the matter with Miller that Power who had no experience in production, and as such Williams could not justify a like for like replacement for plaintiff. Williams also explained the differences in positions of the two non bargaining employees, Rick Kline and Scott Mathews who received a SBP. A capital projects worker, Kline's last day was September 30, 2001 because his projects were cancelled after the decision to close. A two week adjustment of his last day was allowed so that he could start another job. Mathews, an Environmental, Health and Safety worker swapped his position with Bob Bennett because both had identical jobs and the same amount of time in their respective positions. Williams attested to his belief that Bennett was actually more qualified for the job then Matthews. Williams reiterated his position that all severance payments were paid to those who met their last day requirement or switched dates with like for like employees.

Plaintiff never responded to the September 19, 2001 e-mail. At some point between September 12 and 30, 2001, plaintiff met with Bowen to discuss his SBP. Bowen reiterated all of the aforementioned arguments regarding her basis for failing to approve the SBP of the plaintiff. Bowen offered to talk to Chevron to request that Chevron defer its hire of the plaintiff until early

2002 so that plaintiff could work for Rohm and Haas until his last day and qualify for his SBP. Plaintiff did not accept Bowen's offer nor did he ask Chevron if he could defer his employment. Bowen alleges that she was willing to consider a adjustment of up to one month of the plaintiff's assigned last day, but that plaintiff was unwilling to explore any Chevron start date other than October 1, 2001.

Moreover, in addition to the plaintiff, seven other Rohm and Haas employees left the Moss Point plant to begin Chevron employment on October 1, 2001. None of those employees received a SBP. Two of those employees were hourly and submitted their SBP related grievances to two separate labor arbitrations through their union. The two arbitrators denied the grievances and determined that the employees were not eligible for the SBP.

The Rohm and Haas Retirement Plan ("Plan") presents the SBP in Article XI, referring to it as an "IERD" for involuntary early retirement date. Section 11.2 of the Plan contains the eligibility conditions for the SBP with the first general condition presented in Section 11.2.1 that an employee must be "formally informed that his or her employment is scheduled for elimination as a result of job elimination, reduction in workforce, restructuring or other nonperformance related reasons." Section 11.2.2 presents the eligibility condition that the employee-participant be "actively employed ...on such Participant's Last Day Worked" "Last day worked" is defined in Section 1.41 of the Plan as "the date selected by a Participant's Department Manager to be his or her last day of active employment." This "Last Day Worked" eligibility condition is part of the SBP because it induces experienced employees facing a shutdown of their unit or Plant to continue working for Rohm and Haas for as long as their managers determine their services are needed. (Affidavit of Jane Bowers attached to Defendant's Motion for Summary Judgment)

Section 15.3 of the Plan vests Rohm and Haas Administrative Committee with the power to

6

make "conclusive" interpretations and decisions regarding the Plan, including the power to "decide all questions relating to the eligibility of Employees to become Participants in the Plan" and the power to "interpret the provisions of the Plan in all particulars ." Finally, under Section 15.2.5 of the Plan, the Administrative Committee "may, at its discretion, allocate ...to other persons those functions and responsibilities that it deems advisable for the efficient operation and management of the Plan ."

The SBP originated in August of 1998 and continued until December 30, 2003. In August of 1998, plaintiff was employed by Morton International, Inc.("Morton") at the chemical plant located at Moss Point, Mississippi. In June 1999, Rohm and Haas acquired Morton and the Moss Point Plant and Plaintiff was hired by Rohm and Haas. After the acquisition, Rohm and Haas prepared a July 1999 update on the SBP for the Moreton employees that constituted a summary plan description (SPD) for the SBP. Plaintiff received this SPD during the course of his employment. (Exhibit 11, Def. Mot. For Summary Judgment, pp64-65) . The first section of this July 1999 SPD is entitled "Eligibility and first bullet point eligibility condition listed the SPD is that "You must be actively employed by the Company on the date selected by your manager as the last day of active employment".

### B. Discussion

The United States Court of Appeals for the Fifth Circuit has set forth a well established two step framework for analyzing denials of benefit claims under an ERISA plan. *Gooselink v. AmericanTelephone and Telegraph, Inc*, 272 F.3d 722 (5th Cir.2001). In the first step, the court must determine if the interpretation of the plan was legally correct. This assessment involves the consideration of: (1) whether the administrator has given the plan a uniform construction , (2) whether the interpretation is consistent with a fair reading of the plan, and  (3) any unanticipated

costs resulting from different interpretations of the plan. *Tolson v. Avondale Industries*, 141 F.3d 604, 608 (5th Cir. 1998). Only if the court determines that the interpretation of the plan is not legally correct, must it determine if the benefit denial was an abuse of discretion, which is the second step in the analysis. *Theadgill v. Prudential Securities Group, Inc.*, 145 F.3d 286 (5th Cir. 1998).

The factors relevant to the abuse of discretion analysis are: (1) the internal consistency of the plan under the administrator's interpretation (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith. *Gooselink*, 272 F.3d at 726

The Court finds that Plaintiff's claim for SBP fails under both parts of the ERISA analysis as the language in the Plan is clear regarding the eligibility condition of working until the assigned last day. Plaintiff does not appear to dispute the fact that he realized that January 31, 2002 was his assigned "last working day" to be eligible to collect SBP benefits. Second, the Court finds there is no ambiguity with regard to the SBP swap provision which requires Company approval. The determination that a maintenance supervisor with no production experience could not be swapped for an experienced production supervisor in demand appears to satisfy the second factor of the legally correct standard in the Plan documents. Moreover, the Court finds that the uniform construction of the Plan was also satisfied as no Moss Point employee received the SBP if he did not satisfy the eligibility requirements. When employees similarly situated to the plaintiff left their employment, they were not given SBP benefits and the Court notes that Defendant successfully defended those claims in arbitration. The final factor regarding unanticipated costs was also satisfied if others who did not satisfy the eligibility conditions were allowed to leave before their assigned last day and receive SBP benefits, the cost of SBP would increase and one of the reasons for providing SBP benefits, to give an incentive for employees to stay until they were no longer needed,

would be lost.

Based on the foregoing ,the Court finds that the determination that the plaintiff was not eligible for SBP benefits is a legally correct interpretation of the Plan. As the Court has make this determination, it need not proceed to the second step or the abuse of discretion analysis. The Court finds that the denial of SBP benefits was based on unambiguous language in the Plan documents and the plaintiff's failure to satisfy the SBP eligibility conditions. Thus, this Court finds that there are no genuine issues of material fact present in this action, and that the defendants are entitled to summary judgment as a matter of law. Accordingly, the Defendants' Motion [31-1] for Summary Judgment should be granted.

This the 22nd day of April, 2005.

_____
CHIEF UNITED STATES MAGISTRATE JUDGE